# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT WESTERN DIVISION OF OHIO

|  |  |
|---|---|
| ANDREIA CARR, DARLENA WITHERSPOON and DESTINEY FULLER | ) ) ) ) ) ) |
| Plaintiffs | ) ) |
| v | ) ) |
| REINO LINEN SERVICE, INC. | ) ) |
| Defendant | ) |

## COMPLAINT WITH JURY DEMAND

Plaintiffs, Andrea Carr, Destiney Fuller and Darlena Witherspoon, represented by Michelle E. Vocht and Lynn H. Shecter of Roy, Shecter & Vocht, P.C., complain:

1.     Andreia Carr [Carr], who is an African-American woman, is a citizen of the City of Toledo, Lucas County, Ohio.

2.     Darlena Witherspoon [Witherspoon], who is an African-American woman, is a citizen of Toledo, Lucas County, Ohio.

3.     Destiney Fuller [Fuller], who is an African-American woman, is a citizen of Toledo, Lucas County, Ohio.

4.      This lawsuit challenges hostile work environment race and sex

discrimination by Plaintiffs' immediate supervisor(s) brought pursuant to Title VII

of the Civil Rights Act of 1964, as amended, 42 USC §2000e; et seq,  arising out of

Plaintiffs' employment with Defendant, Reino Linen Service, Inc. (Reino), and

under 42 U.S.C. § 1981.  Plaintiffs suffered unequal and retaliatory discipline, and

were all fired on the same day for merely requesting time-off to see their lawyer for

legal advice about their charges.

5.      Jurisdiction is vested in this Court pursuant to 42 USC §2000e-16, and 28

USC §1331, and 42 U.S.C. § 1981.

6.      Carr and Witherspoon were each issued a Right-To-Sue Letter on September

15, 2020, and Fuller was issued her Right-To-Sue Letter on October 14, 2020 for

the reason that they were pending over 180 days.  This complaint is filed within 90

calendar days of receipt of the issuing of all of the Plaintiffs' Right-To-Sue letters,

and all procedural requirements are met.

7.      Defendant Reino's main offices are located in Brownstown Township,

Michigan, but it conducts business in Toledo Ohio area.  Reino supplies hospitals

and healthcare facilities with laundered and folded linen for patient and health care

provider use.

8.      Venue is properly set in this Court because the acts and conduct of which

Plaintiffs complain  occurred at ProMedica Toledo Hospital located on Core Boulevard in Toledo, Ohio.

9.      On or about June 15, 2019, Carr became employed by Reino as a linen attendant.

10.     On or about June 15, 2018, Witherspoon became employed as a linen attendant.

11.     On or about June 15, 2018, Fuller became employed as a linen attendant.

12.     The Plaintiffs' job linen attendant jobs were extraordinarily important to them economically and as a way of allowing them to achieve the fundamental objective of equality in employment as self-sustaining working Americans.

13.  All Plaintiffs were directly supervised by Reino's employee, Justin Bain, who was the primary manager on site and who is White.

14.     Plaintiffs were all subjected to persistent and unwelcome racial and sexual comments made by Mr. Bain, including but not limited:

- Why do Black people talk ghetto?

- Why do Black people pronounce words the way you do

- How do you say tomato?  Do you say "tomato" or "tomayto"/sorbet or sherbet?  And otherwise making fun of Plaintiff's speech and pronunciation of words.

- Treating Plaintiffs as inferior to White people in the use of language, because of their color, and how they dressed.

- Why do you have so many shades of color, light to black-black?

- Black people have nappy hair, and white women have long silky hair

- "Look at Andreia–take your wig off with knowledge that Carr is bald.

- Saying he will cut the tail off the horse in his neighbor's yard and give it to Carr and Fuller as a wig.

- Calling Witherspoon, who is a Lesbian, the "man of the hour".

- Separating Ms. Carr and Ms. Witherspoon because he feared Ms. Witherspoon's gender preference involved Ms. Carr.

- Telling Witherspoon that "since she wants to be a man, he is going to challenge her like one"

- Asking both Fuller and Carr about their breasts and buttocks, and grabbing the buttocks of Carr on September 20, 2019.

- Wondering how it would feel to be in Carr's pants

- Staring at them

- Inviting Carr to the casino, and then coming in mad on Monday because she did not call him to meet him at the casino after he went and retrieved $110 bills

- Telling Carr he needs to talk to her alone, and taking her to the scrub room, then suggesting that if she looks out for him sexually, he will look out for her. Carr replied, "That's not going to happen."

- Also making the same invitation to Ms. Fuller, and asking Ms Fuller if he could be her sugar-daddy

- Making fun of Ms. Carr's blond hair wig

- Asking why Ms. Witherspoon had breasts, he thought she was a man.

- Telling the Plaintiffs if they complained they would be fired

- Informing the Plaintiffs that he was invincible and that nothing was going to happen to him

- Blowing kisses and winking at the Plaintiffs.

- Telling Plaintiffs he was their slave owner.

- Asking other plaintiffs and employees why Witherspoon has breasts since he thought she was a man.

15.    Another supervisor, Mr. MacCauley, who is African-American,  informed the Plaintiffs that if they complained about Bain they would be fired.

16.    On February 20, 2020, another White  male supervisor, Matthew Schnell. brushed his arm against Carr's breasts and several days later grabbed her from behind.

17.     After they complained about discriminatory mistreatment, Plaintiffs were

disciplined for picayune things, including Witherspoon signing in for Carr, who

was on crutches behind her because of a broken foot, and disciplining Witherspoon

for leaving early after she was directed to leave early by her supervisor. Plaintiffs

were not trained or informed of rules under which they were disciplined, and none

had access to computers for computer learning given their financial stations.

18.     Similar situated employees were not disciplined for same or similar conduct

after Plaintiffs complained, and Plaintiffs were treated unequally.

19.     Fuller was demoted from her lead position, and assigned more strenuous and

unfavorable tasks.

20.     Reino failed to post and prominently display EEOC rules and regulations on

the bulletin board where employees, like Plaintiffs, could read them and be aware

of their rights. Only after Plaintiffs were directed to look for the EEOC poster did

they find it posted behind a locker.

21.     Reino failed to pass out its employee handbook until after Plaintiffs'

complained and begged to see it, and then Reino collected it within hours of

passing it out. Therefore, Plaintiffs were deprived of fair access to any complaint

procedure contained in it, no matter how inadequate, that might have been useful.

22.     In June of 2020, supervisor Schnell wrote Carr up for falling on a slippery

floor and injuring herself on the job.

23.    Bain observed and laughed when a white employee, who was also only a linen attendant, to pat Carr on the head and hand and to instruct her to sit in a certain chair.  Carr objects to being "treated like a dog".

24.    On July 9, 2020, Reino fired Carr, Witherspoon and Fuller as a superficial excuse because, on the day before, they dared to ask for time off on July 13, 2020 to meet with their lawyer about case.

COUNT I
TITLE VII SEX DISCRIMINATION
AND RETALIATION

25.    Plaintiffs incorporate by reference their prior allegations as though fully set forth.

26.    This action is brought ot Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e.

27.    Plaintiffs are all female, and Witherspoon identifies herself as a Lesbian.

28.    Defendant's conduct as alleged more particularly above consititutes discrimination based on sex in violation of Title VII.

29.    Title VII prohibits all forms of discrimination because of sex and sexual identify, however they manifest themselves or whatever labels might attach to them.

30.     Defendant manifested discriminatory animus toward Plaintiffs because of their genders, including unwanted sexual advances, manifest intent for *qui pro quo* sexual favors, and advanced sex discrimination by failing to take steps to arrest such misconduct performed by direct supervision over the Plaintiffs.

31.     After Plaintiffs' complained, the Defendant, through another White supervisor, began a campaign of retaliatory discipline which was focused on Plaintiffs, imposed for minor conduct that other employees were not disciplined for, and ultimately Plaintiffs were terminated merely for *asking* for time off to see their lawyer.

## REQUEST FOR RELIEF

As a result of Defendant's discriminatory misconduct Plaintiffs sustained damages, including but not limited to:

1.     Lost wages, including overtime, and benefits;

2.     Plaintiffs suffered the emotional pain and anguish which flows from being victimized by discriminatory misconduct.

3.     Plaintiffs are entitled to punitive damages for Defendant has engaged in intentional discrimination and acted "with malice or with reckless indifference to the federally protected rights" well as costs and attorneys fees so wrongfully sustained.

## COUNT I
## TITLE VII RACE DISCRIMINATION
## HOSTILE WORK ENVIRONMENT AND RETALIATION

32.     Plaintiffs incorporate by reference their Common Allegations and Count I as though fully set forth.

33.     Plaintiffs were subject to slurs, disparaging statements, taunting, and cruel remarks about African-America use of speech, accents, hair consistency, color and styles,  and their direct supervisor referring to himself as Plaintiff's slave holder.

34.     These abhorrent statements and the insistence that no adverse effects would befall him as a result of his conduct, created an intimidating and hostile work environment subjecting Plaintiffs to fear and shame.

35.     After Plaintiffs' complained, the Defendant began a campaign of retaliatory discipline which was focused on Plaintiffs, imposed for minor conduct that other employees were not disciplined for, and ultimately Plaintiff were terminated merely for *asking* for time off to see their lawyer.

## REQUEST FOR RELIEF

As a result of Defendant's discriminatory misconduct Plaintiffs sustained damages, including but not limited to:

1.     Lost wages, including overtime, and benefits;

2.     Plaintiffs suffered the emotional pain and anguish which flows from

being victimized by discriminatory misconduct;

3.      Plaintiffs are entitled to punitive damages for Defendant has engaged in intentional discrimination and acted "with malice or with reckless indifference to the federally protected rights" well as costs and attorneys fees so wrongfully sustained.

## COUNT III
## VIOLATION OF 42 U.S.C. § 1981

36.    Plaintiffs incorporate by reference their common allegations, Counts I and II as though fully set forth.

37.    As more fully set forth above, Plaintiffs, as African-Americans, were subjected to a hostile work environment based upon their race.

38.    Plaintiffs requested time off, several days in advance, to meet with their lawyer to discuss the charges then pending with the Ohio Civil Rights Commission and Equal Employment Opportunity Commission.

39.    Each was threatened with termination if she took the time off for that meeting.

40.    None took that time off, and chose to not take the time off.  One of the Plaintiffs was going to the office to tell supervision she was not taking the time off.

41.    That particular Plaintiff never even given the chance to communicate that the appointment had been cancelled for all Plaintiffs by their attorney.

42.     All the Plaintiffs were fired for asking for the time off to meet with their

attorney.

43.     The meeting for which they were seeking time off was not even scheduled

until Monday July 13, 2020. Request for time off was made on July 7, 2020, and

the Defendant terminated the Plaintiffs on July 9, 2020.

44.     Not only having been subjected to injurious and overt acts of race

discrimination, Defendant jumped at what it hoped was an opportunity to fire

Plaintiffs when none had done anything wrong or missed work, but only asked for

time off for purposes of processing their discrimination charges.

45.     As a result, Plaintiff were wrongfully fired.

46.     Defendant engaged in racially discriminatory practices toward Plaintiffs with

malice or with reckless indifference to their protected rights, and they are entitled

to an award of punitive damages under 42 U.S.C. § 1981(a).

REQUEST FOR RELIEF

As a result of Defendant's discriminatory misconduct Plaintiffs sustained

damages, including but not limited to:

1.     Lost wages, including overtime, and benefits;

2.     Plaintiffs suffered the emotional pain and anguish which flows from

being victimized by discriminatory misconduct;

3.      Plaintiffs are entitled to punitive damages for Defendant has engaged in intentional discrimination and acted "with malice or with reckless indifference to the federally protected rights"  well as costs and attorneys fees so wrongfully sustained.

JURY DEMAND

Plaintiffs seeks a jury trial for all claims so triable.

ROY, SHECTER & VOCHT, P.C.

/s/Michelle E. Vocht
Michelle E. Vocht (MI-P32924)
Attorney for Plaintiffs
707 S. Eton St.
Birmingham, MI 48009
(248) 540-7660 (Office)
(248) 540-0321
vocht@rsmv.com

Dated:  November 2, 2020